Sovereign Camp Woodmen of the World *v.* Key.

Opinion delivered May 16, 1921.

Insurance—fraternal society estopped by knowledge of local agent.—The local agent of a fraternal society, through whom only a member may commuicate with the ruling officials of the society, and whose duty it is to report the standing of members, is the agent of the society, and a member's duty under the rules of the society to give notice of engaging in a more hazardous employment was complied with by giving notice to such agent; and where notice was so given, and the member was not notified of any increase of assessment, the order was estopped to deny payment of the proper dues, though the laws of the society provided that no officer or agent could waive the provisions of the laws.

Appeal from Clark Circuit Court; *George R. Haynie*, Judge; affirmed.

*T. E. Helm*, for appellant.

1. Under the constitution and by-laws of the order employment in an electric current generating plant is classed as hazardous, and appellee failed to give notice and pay the increased assessment rate and his certificate of benefit was null and void.

2. Under the facts of the case plaintiff was not entitled to recover. He made no offer to pay the additional rate.

3. There was no waiver; at least, the clerk of the local camp had no authority to waive the provision in the constitution and by-laws requiring the payment of the monthly installment rate. It was Key's duty to acquaint himself with the provisions of his certificate and the constitution and by-laws of the order, and a failure to pay the additional rate avoided his benefit certificate.

104 Ark. 538; 129 *Id*. 159; 133 *Id*. 411.   Act 462, Acts 1917, § 20, is applicable here, and it is not within the power of a clerk of a local camp to waive the payment of the additional assessment for hazardous occupation. 142 Ark. 154.

4.   There was no estoppel, as that doctrine does not apply.   There was no conduct of defendant or the clerk of the local camp such as to induce action or inaction in reliance thereon, or which could have operated to mislead Horace Key to his injury.   There was no fraud or advantage taken.   There is nothing to show that any one at any time did anything to discourage, hinder or prevent him from paying the additional dues required.   142 Ark. 154.   188 S. W. 941 is a very similar case and is controlling here.   See, also, 2 Bacon on Life & Acc. Ins., p. 1496.

5.   It was error to give instruction No. 1 for plaintiff.   It does not declare the law properly, and in effect told the jury that the clerk of the local camp could waive the requirements of the constitution and laws of the order, which the clerk could not do.   Act 462, Acts 1917, § 20.   The peremptory instruction asked by defendant should have been given, as the evidence plainly showed that Horace Key was a member of the order and insured as a machinist, an ordinary or preferred occupation, and that he afterward changed to the hazardous one of an electric current generating plant, and that he never paid or offered to pay the increased rate.

*McMillan & McMillan*, for appellee.

It is not absolutely clear that defendant was entitled to win this case, even if there had been no estoppel shown. The policy was incontestable after five years except where the policy-holder dies while engaged in a hazardous occupation.   The burden was upon the insurer to bring itself within the exception, and it has failed.   140 Ark. 612.

Horace Key was an enlisted man and exempt from the additional premium required by § 43.   140 Ark. 313.

Defendant is clearly estopped to claim a forfeiture. Horace Key was misled by the belief that his policy was still in force. The clerk of the local camp was the agent of the sovereign camp, and his knowledge was that of the principal or sovereign camp. 127 Ark. 133. See, also, 140 Ark. 289.

Smith, J. On the 15th day of June, 1914, the appellant, Sovereign Camp of the Woodmen of the World, issued its beneficiary certificate for a thousand dollars to H. C. Key, of Arkadelphia, Clark County, Arkansas, naming as beneficiary in said certificate appellee, Mrs. Albey Key, the mother of the insured. In his application Key stated that he was a machinist, which occupation was and is classed as an ordinary or preferred occupation, and required payment of the ordinary or preferred rate. Key paid this rate until the time of his death.

About August 1, 1917, Key removed to Malvern, Arkansas, where he entered the employment of the Arkansas Light & Power Company at its electric current generating plant as engineer, in which capacity he worked about a year. He then entered the United States army, where he served until discharged in June or July, 1919, and on his discharge he returned to the employment of the Arkansas Light & Power Company, where he again worked as engineer for two months and until the time of his death.

On the night of September 16, 1919, Key was found dead at said electric current generating plant. No one saw him die, but the body was found lying in the water at the bottom of the condenser pit, and those who attempted to remove the body received electric shocks in coming in contact with the water. The body was burned and blistered.

The constitution and by-laws of the order in force during all the time Key was a member contained the following sections and parts of sections:

"Section 43. Persons engaged in the following occupations, towit:

"(a)   Sailors on seas, electric linemen, employees in electric current generating plants and enlisted men in the army and navy during war, may be admitted to membership if accepted by the sovereign physician, but their certificates shall not exceed two thousand dollars each and their rates of assessment shall be 30 cents for each one thousand dollars of their beneficiary certificate in addition to the regular rate while so engaged in such hazardous occupation.

"(b)   If a member engages in any of the occupations or business mentioned in this section, he shall within thirty days notify the clerk of his camp of such change of occupation, and while so engaged in such occupation shall pay on each assessment thirty cents for each one thousand dollars of his beneficiary certificate in addition to the regular rate.   Any such member failing to notify the clerk and to make such payments as above provided shall stand suspended, and his beneficiary certificate be null and void."

"Section 69 (a).   No officer, employee or agent of the sovereign camp, or of any camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this constitution or these laws, nor shall any custom on the part of any camp or any number of camps with or without the knowledge of any sovereign officer have the effect of so changing, modifying, waiving or foregoing such laws or requirements. Each and every beneficiary certificate is issued only upon the conditions stated in and subject to the constitution and laws then in force or thereafter enacted.

"(b)   The constitution and laws of the sovereign camp of the Woodmen of the World now in force, or which may hereafter be enacted, by-laws of the camp now in force, or which may be hereafter enacted, the application and certificate shall constitute a part of the beneficiary contract between the order and the member."

The testimony shows that one Waldrop was the local clerk of the appellant order, and that he served in that

capacity for about ten years and during all the time Key was a member. After Key changed his occupation, Waldrop was notified of that fact by Key's father on an occasion when he paid dues for his son. Later the same information was conveyed to Waldrop by the insured's sister when she paid dues for her brother. It was shown to have been the custom of the local clerk, when notified that a member had changed his occupation, to communicate that information to the sovereign clerk of the head camp, so as to learn what amount to increase or decrease the rate to be paid by the member, giving the notice, and, after receiving this direction from the clerk of the head camp, to notify the member of any change in assessment.

Section 112 of the by-laws provided the time and manner in which the local clerk should make remittances of dues collected by him, and that, ''accompanying such remittances, the clerk shall also forward such detailed statement of the standing of the members in the camp as shall be required for the information of the sovereign clerk, upon blanks furnished for that purpose.''

No notice of change in assessment was given by the local clerk, and the insured continued to remit from Malvern, where he was employed, to his sister in Arkadelphia, where she and Waldrop both lived, and the sister paid the dues with the remittances thus received.

The cause was submitted under an instruction which told the jury to find against the company if the finding of fact was made that the sister of Key, when paying dues, had notified Waldrop that Key was engaged in an electrical current generating plant. There was a finding and judgment against the company, from which is this appeal.

It will be observed that the appellant here was the appellant in the case of *Sovereign Camp of Woodmen of the World* v. *Newsom*, 142 Ark. 132, and that certain excerpts from the constitution and by-laws of the order herein set out appeared also in the statement of facts in the Newsom case.

The principles announced in that case control here. The local clerk is the agent of the order. It is to him, and through him only, that the member may communicate with the ruling officials of the order. The member complied with his duty when he advised the local clerk of his change of occupation.

In the Newsom case the court said: ''Since the clerk of the local camp must be regarded as the agent of the sovereign camp in the matter of collecting assessments and reporting the standing of the members to the sovereign clerk, the knowledge of the agent acquired in the discharge of his duties was the knowledge of appellant (the company).''

In the Newsom case the facts were that the insured had arranged with his bank to pay dues upon presentation of proper receipt, and, pursuant to this custom, the bank would have paid the particular dues in question, had receipt therefor been presented. This arrangement was made for the convenience of the local clerk. Presentation of the receipt to the bank was not made, and the dues were not paid, and the member became delinquent. The contention was made that the local clerk was acting as the agent of the insured in collecting the dues through the bank, and that, in so far as the clerk was acting for the order, or could act for it, he had no duty to perform except to receive the money and to receipt for it and forward it. The court, however, held against that contention, and in doing so said: ''Having reached the conclusion that the clerk of the local camp was the agent of appellant and acting within the scope of his authority in making collections, remittances and reports to the sovereign clerk, it is manifest that appellant is estopped by the conduct of the local clerk from claiming a forfeiture of Newsom's policy or certificate under the undisputed facts above set forth.''

Upon the authority of that case, and of the cases therein cited, we hold that the appellant is estopped, in view of the jury's finding, to assert that the insured did

not pay proper amounts of dues. This is true because it was Waldrop's duty to report the information he had received to the head camp and to revise his collection of assessments to conform to any change made therein as the result of his report, and his knowledge is imputed to the head camp.

As opposing this view, counsel call to our attention section 20 of act 462 of the Acts of 1917 (C. & M. Digest, § 6095), which reads as follows: "The constitution and laws of the society may provide that no subordinate body, nor any of its subordinate officers or members, shall have the power or authority to waive any of the provisions of the law and constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members."

This question was also raised in the Newsom case, the statute being first called to the attention of the court on the petition for rehearing. We there said: "Therefore, what we said in the original opinion concerning the authority of a subordinate body and its subordinate officers to waive any of the provisions of the laws and constitution of the society is retracted, and we now hold, in view of this statute, that it was not within the power of the local clerk of appellant to waive the payment of the March dues on or before the first day of April as required by the law and constitution of appellant."

But the decision of the court was not changed. The difference between waiver and estoppel was pointed out, and the court held that, while the subordinate officers would have no power or authority, in view of the statute, to waive any of the provisions of the law and constitution of the society, the insurer, notwithstanding the statute, stood charged with the knowledge of any of its officers acquired in the discharge of their duties. And what the court there said is equally applicable here.

Judgment affirmed.