EMINENT HOUSEHOLD OF COLUMBIAN WOODMEN *v.* SIMMONS.

## Opinion delivered October 31, 1921.

1. INSURANCE—ESTOPPEL TO DENY PAYMENT OF ASSESSMENT.—Where the local secretary of a benefit society adopted the plan of collecting the monthly benefit assessments from its members by drawing a draft each month for such assessments and neglected one month to draw a draft for that month's assessment until the following month, when he remitted to the society the full amount due for both months, the society will be estopped to claim a forfeiture for nonpayment of such monthly dues, though the constitution and by-laws of the society provide that the policy shall be void unless such installments shall be paid on or before the tenth, and that the local secretary is the agent of the insured.

2. INSURANCE—ESTOPPEL BY EFFORTS AT REINSTATEMENT.—Where the insured had paid premiums due on the policy through the insurer's local secretary, she is not estopped because under a misapprehension she made efforts at reinstatement.

Appeal from Woodruff Circuit Court, Northern District; *J. M. Jackson,* Judge; affirmed.

*E. M. Carl Lee,* and *C. H. Moses,* for appellant.

1. It was error to exclude the testimony of the physician touching the condition of Mrs. Simmons' health a few days prior to her application for reinstatement. In her application she expressly waived the right to claim privilege disqualifying the physician from testifying. 103 Ark. 201; 133 *Id.* 411.

2. The court erred in directing the verdict for the plaintiff. There is no similarity between this case and the *Bates* case, 144 Ark. 345, and the *Newsom* case, 142 Ark. 132, differs materially from this in that there was nothing in the constitution and by-laws of that order

stating whose agent the local clerk was, whereas by the constitution and by-laws of this order the local secretary is the agent of the insured. 133 Ark. 441; 130 *Id.* 12; 135 *Id.* 65; 104 *Id.* 538; 80 *Id.* 419; 145 *Id.* 313; 1 Bacon on Benefit Societies, § 80; C. & M. Digest, § 6076; *Id.* § 6095. The insured and beneficiary are chargeable with notice of the provisions of the constitution and by-laws, one provision of which was that the liability of the household and its guests should not be satisfied until the remittance should actually be in the hands of the Eminent Secretary. 104 Ark. 538; 136 *Id.* 355; 142 *Id.* 145; 1 Bacon on Benefit Societies, § 81; 11 R. C. L. § 17, p. 1198.

Appellee is bound by the application of the insured for reinstatement regardless of forfeiture. If deceased did not acknowledge the local secretary to be her agent in transmitting payments, and admitted that she was delinquent, and thereby suspended, there was a dispute between the insurance company and insured relative to her suspension for non-payment of dues, and this would have supported a compromise and settlement between the parties. 74 Ark. 270; 99 *Id.* 588; 43 *Id.* 172; 105 *Id.* 638; 68 *Id.* 82; 14 S. W. 769.

*R. M. Hutchins,* for appellee.

1. There was no forfeiture under the covenant of insurance, and the court properly directed the verdict in favor of the plaintiff. 142 Ark. 132; 144 *Id.* 345; *Illinois Bankers Life Association* v. *Dowdy,* 149 Ark. 72; *W. O. W.* v. *Kay,* 148 Ark. 562. The issue in this case and in the *Newsom* case, 142 Ark. 132, is identical in the two cases, no substantial difference in the material facts. The dues of the insured, correctly speaking, were paid in advance, and it was the duty of the society to see to the proper application of the money so paid or deposited. 48 N.Y. Supp. 649; 151 Ill. 254; 37 N. E. 882; 29 Cyc. 177. Appellant is estopped to set up the neglect of its agent, the local secretary, in bar of recovery by appellee.

2. The alleged application for re-instatement cannot be an issue here. It is not known who signed it, and

the insurer cannot take advantage of the false statement
of its agent in respect thereto.  14 R. C. L. 1174.  The
agent's knowledge of the facts to which he certified is
imputed to his superiors.  It is estopped to deny liabil-
ity.  122 Iowa 260; 98 N. W. 105; 121 Iowa 528; 63 L. R.
A. 603; 29 Cyc. 187; *Id.* 194.

3.  The testimony of the physician was properly ex-
cluded.

WOOD, J.  This is an action brought by the appellee
against the appellant ·to recover on an insurance policy
insuring the life of Seddie L.· Simmons, in which policy
the appellee was named as the beneficiary.  The appel-
lant is a fraternal benefit society and a corporation
authorized to and doing business in this State.  The ap-
pellee set up the policy, and alleged that the insured
died on March 21, 1918; that at the time of her death
all the premiums due on the policy had been paid; that
appellee had complied. with all the conditions of the
policy.  The appellant defended on the ground that the
insured had failed to pay the monthly installment due
for the month of December, 1917.  The facts on this is-
sue are substantially as follows:

I. J. Stacey was president of the Bank of Augusta
and Trust Company.  He testified that he was the
Worthy Secretary of the Local Household, being one
of the subordinate and constituent lodges of the ap-
pellant, whose Eminent Household was located at At-
lanta, Georgia.  Witness countersigned the policy issued
to Seddie L. Simmons on July 26, 1915.  He had been
local secretary since that time.  Mrs. Simmons died
March 21, 1918.  The witness, as local secretary, ·adopt-
ed the following plan for the collection of monthly
premiums:  During the first years he presented monthly
receipts to the Augusta Mercantile Company, and it paid
the installments.  Later on Mr. Simmons ·opened an ac-
count at the Bank of Augusta, and witness made a check
each month on Simmons' account, making the same pay-
able to Columbia Woodmen, specifying the amount of
the monthly dues in dollars and cents and signing Sim-

mons' name, by witness, and marked on the check what
month the dues were being collected for. During
the life of the policy the premiums were paid
in the above manner. During the month of De-
cember, 1917, witness was away sick and didn't
make a check for that month. The witness in-
structed the cashier of the bank to make the monthly
remittance, and for some cause he neglected to check on
Simmons' account for the dues for that month. On
January 14, 1918, witness remitted the December, 1917,
and the January, 1918, dues for Mrs. Simmons in a
check for $2.60 covering these months, which the appel-
lant accepted. Witness also drew a check for $1.30 for
the February dues and a check for $1.30 for the March
dues, both of which were accepted by the appellant. On
October 31, 1918, he received a check from the Eminent
Household payable to the order of the appellee in the
sum of $4.33 with instructions to deliver same to the
appellee. At the time witness forgot to forward the
monthly premium on Mrs. Seddie L. Simmons' policy,
there was in the Bank of Augusta the sum of $539
subject to witness' draft for the payment of the prem-
iums on the policy of Mrs. Simmons. Witness further
testified that it was his duty as Worthy Secretary to col-
lect the dues from the members of the Worthy House-
hold, the local lodge, and forward the same to the Emi-
nent Household.

The appellee testified that from July 26, 1915,
to February of 1916 he presented receipts to the Au-
gusta Mercantile Company and got the money neces-
sary to pay the premiums on his wife's policy, and
from the fall of 1916 to March 21, 1918, the day of his
wife's death, Stacy, the local Worthy Secretary, checked
on witness' account at the bank. Stacy asked witness
if he could pay the premiums on his wife's policy in
that manner, and witness told him that it was all right.
Between December 1 and December 10, 1917, wit-
ness had the sum of $539 in the bank on which Stacy
could draw to pay the premiums.

The application of the insured and the constitution
and by-laws of the society expressly constitute a part of
the contract of insurance. In the application the insured
agreed, among other things, as follows:

"If I neglect to pay all installments and dues on
or before same become due, this shall render my cove-
nant null, void and of no effect, and all my rights and
benefits thereunder to myself or beneficiaries, shall be
forfeited thereby without notice, and all payments made
thereon by me shall be forfeited by liquidation.  *  *  *
I understand that no agent, officer or member can alter
the requirements of the society in any way."

Among other provisions in the constitution are the
following:

"All installments are due and payable to the
Worthy Secretary on the first day of the month, and,
when not paid on or before the tenth, the worthy guest
shall thereby stand suspended, and his covenant shall
be null and void. No agent, deputy, worthy secretary
or any other person shall have the power to in any wise
alter or change the above provisions nor any of the
rules or regulations of the fraternity."

"Every beneficiary guest who shall fail to pay
the beneficiary installment and the general expense and
field fund installment on or before noon of the tenth
day of the month, shall, by the fact of such non-payment,
or any such non-payment, become and be suspended, and
during such suspension the beneficiary covenant shall
be null and void, and shall remain so absolutely until re-
instated by compliance with the prescribed conditions,
and during suspension a guest shall be without rights
of any kind whatever in this fraternity."

The constitution and by-laws contain these further
provisions: "The Worthy Secretary shall keep records,
attend to the correspondence, accounts, literature, and
the general labors of the Household; keep minutes of the
Feasts, and shall notify the Household and Eminent
Household of all guests in arrears.  *  *  *  *  *  He
shall receive and receipt for all money due the House-

hold, turn the same over at once to the Banker; attest all orders drawn on the Banker.  *  *  *  *  He shall make reports, post all notices required by the officers of the Eminent Household. He shall remit all funds due the Eminent Household to the Eminent Secretary, by postoffice or express money order or New York Exchange, payable to the order of the Eminent Banker (personal checks not acceptable), on or before the 12th of each month, and make full and complete reports as required by the Eminent Household.  *  *  *  * The Worthy Secretary shall not make representation or waivers by the authority not delegated to him, or to ·the Household under the Constitution and Laws of the Fraternity, and no act exceeding the power thereby con- ·ferred or in conflict therewith shall be binding upon the Eminent Household. The Worthy Secretary is the agent of the guest of the Household.''

Another provision reads in part, ''No agent, deputy, Worthy Secretary or any other person, shall have the power to in any wise alter or change the above provision, nor any of the rules or regulations of the fraternity.'' And further, ''The Worthy Secretary of each Household shall remit on or before the 12th day of each month to the Eminent Secretary,  *  *  *  * all funds derived from the installments last levied, and arrearages, together with the full report, showing also the name of every guest not in good standing. The liability of the Household and its guests shall not be satisfied until the remittance shall be actually in the possession of the Eminent Secretary. Without notice, the Worthy Secretary shall, on or before the 12th day of each month, forward full report as above, and the required installments from each guest.''

Another provision reads as follows: ''The liability of the Eminent Household of Columbian Woodmen for payment of benefits in the event of death or total disability of a guest shall not accrue nor exist on any cove-

nant unless all conditions thereof, as recited and referred to therein, and in this constitution and by-laws, be fully complied with.''

On the back of the policy is an endorsement admonishing the Worthy Secretary to ''pay on the first of the month. Insure your loved ones against loss by accident lapse, as your failure to pay on or before the tenth of the month will render this covenant void. Hence be watchful.''

Upon the above facts the appellant prayed the court to instruct the jury to return a verdict in its favor, which the court refused, to which ruling appellant duly excepted. The court thereupon instructed the jury to return a verdict in favor of the appellee, to which ruling appellant also duly excepted. The jury returned a verdict in favor of the appellee in the sum of $840.80 with interest. Judgment was rendered in the appellee's favor for that sum, from which is this appeal.

In the case of *Sovereign Camp Woodmen of the World* v. *Newsom,* 142 Ark. 132-145, we said: ''It appears from the undisputed facts of this record that money was on deposit in the Bank of Portland for the purpose of paying the assessments of Newsom at the time when they became due under the laws of appellant. The laws of the order nowhere prescribe the method which the clerk should pursue in collecting the assessments. That was left entirely with him, and he adopted the method of collecting same, as we have shown, by draft, with his receipt attached, on the bank where the money was deposited to pay the same. He also adopted (for his own convenience, not Newsom's) the custom of making his remittance and report after the fifth of each month. It occurs to us that the case is precisely the same in legal effect as if Newsom had tendered to the agent of the appellant, duly authorized to collect monthly assessments, the amount of such assessment at the time the same was due, and that the agent failed or refused, for some reason, no matter what, to receive the same and report to his principal, as was his

duty to do on the fifth of each month.    *    *    *    *

"As we view the facts, it must be held as a matter of law that, so far as Newsom was concerned, he had paid his March dues, which is but another way of saying that the appellant is estopped by the conduct of its duly authorized agent acting within the scope of his authority from asserting that such assessments was not paid."

And on rehearing, at page 158, we said: "This doctrine of equitable estoppel is as applicable to fraternal societies as to old line companies. Now here there was something more than a single act of the local clerk in not collecting the dues of Newsom on or before the first of each month. The clerk through a period of years had adopted the method set forth in the original opinion which was clearly calculated to induce the belief upon the part of Newsom that his dues had been paid according to the method adopted by the local clerk for collecting the dues and reporting the same, and that the society had accepted such payments and would, therefore, not insist upon a forfeiture because of the failure of the clerk to comply, in this respect, with its laws and constitution. This conduct of appellant's agent under the authorities above cited clearly estops appellant from denying that the March dues were paid as required."

The facts in the case at bar are similar in all essential particulars concerning the payment of dues to the case of *Soverign Camp W. O. W.* v. *Newsom, supra.* The cases cannot be distinguished in principle on the facts. We do not care to travel over the same ground on the questions of payment and estoppel as were covered in the Newsom case. See also *Soverign Camp W. O. W.* v. *Key,* 148 Ark. 562; *Illinois Bankers Life Assn.* v. *Dowdy,* 149 Ark. 72; and *Security Life Ins. Co.* v. *Bates,* 144 Ark. 345.

Appellant contends that there is a clear distinction between the facts of this case and those of the Newsom case in that the constitution and by-laws of the appel-

lant in the case at bar contain this provision: "The Worthy Secretary is the agent of the guest of the Household;" whereas no such provision was found in the constitution and by-laws under review in the Newsom case. But in the Newsom case we quoted with approval from *Supreme Lodge K. of H.* v. *Davis,* 26 Colo., 252, holding as follows: "In a mutual benevolent order composed of a supreme lodge and subordinate lodges, an officer of a subordinate lodge charged with the duty of notifying the members of assessments made by the supreme lodge for the purpose of paying insurance certificates of deceased members, and of collecting and forwarding to the supreme lodge such assessments, is an agent of the supreme lodge, *notwithstanding a rule or by-law of the order recites that such officer in collecting or forwarding assessments shall be the agent of the members of the subordinate lodge,* and the supreme lodge is charged with all knowledge possessed by the agent in making the collection."

The recital in the constitution and by-laws of the appellant that "the worthy secretary is the agent of the guest of the Household" can only mean that such secretary is the agent of the guest of the Household in those matters wherein he could perform some act or discharge some duty for the individual member or guest. The provision clearly could not relieve the local Household of the duties it had to perform as the agent or the representative of the Eminent Household. The local lodge as well as the Eminent Household could only act through its own agent in the matters of the countersigning of policies, the collecting of premiums, making reports as to the standing of members to the Eminent Household, posting notices, remitting dues, and various other duties prescribed for the worthy secretary in the constitution and by-laws of the order. The worthy secretary could not be the agent of both the insurer and the insured concerning matters wherein there might be a conflict in their respective interests. Here the uncontroverted facts show that, so far as Mrs. Simmons is con-

cerned, her dues were paid. She had met all the requirements of the contract according to the methods which the appellant had adopted for collecting the installments. When the local secretary failed to send in the installments and make the correct report as to the payment of her monthly dues, in these particulars he was representing the appellants, and could not at the same time be representing Mrs. Simmons.

Having paid the installments and thus preserved her rights under the policy, she would not be estopped by any misapprehension that she may have had as to her standing and the efforts toward reinstatement growing out of such misapprehension. Therefore, as the insured was never in fact in arrears, the issue of invalid reinstatement raised by the appellant cannot avail. Under the uncontroverted facts it has no place in the case. The judgment is in all things correct, and it is therefore affirmed.

McCulloch, C. J., and Smith, J., dissenting.