BEAVERS *v.* AMERICAN INSURANCE UNION.

Opinion delivered January 30, 1928.

1. INSURANCE—MERGER OF ASSESSMENT SOCIETY—PREMIUMS.—Where an assessment society became merged into an association requiring monthly payments, one who was re-insured in the latter association was required to pay the premiums monthly as required by the reinsurer's by-laws.

2. INSURANCE—LAPSE OF POLICY—REINSTATEMENT.—In an action by the beneficiary of a life insurance policy against the association to recover proceeds of a certificate of an insured on her death, evidence *held* not to show as a matter of law that the insured had been reinstated.

3. INSURANCE—ESTOPPEL TO DENY REINSTATEMENT.—In an action against an insurer on a certificate of benefit, it was error to direct a verdict for the defendant where the jury could have found from the evidence that the insurer was estopped to deny

that the insured had been reinstated after a lapse of her certificate by reason of the insurer accepting payment of premium.

4. APPEAL AND ERROR—REVIEW OF JUDGMENT DIRECTING VERDICT.—On review of a judgment directing a verdict, the Supreme Court is required to assume the possible findings of the jury in the light most favorable to the appellant.

5. INSURANCE—ESTOPPEL TO DENY PAYMENT OF PREMIUMS.—An insurer may, in an action on a policy, be estopped to deny that the premiums were paid in proper time to prevent a forfeiture, where it is shown that on previous occasions payments had been made at a time subsequent to that required by the insurer, and yet they had been accepted and the policy continued in force.

Appeal from Sharp Circuit Court, Northern District; *John C. Ashley,* Judge; reversed.

*George M. Booth* and *Walter L. Pope,* for appellant.

*Basil Baker,* for appellee.

SMITH, J. On January 1, 1917, the Ozark Mutual Life Association, hereinafter referred to as the Association, issued two certificates of insurance to Mrs. Mary E. Beavers, in which her son, Van Beavers, was named as beneficiary, and at the same time issued certificates of insurance upon the lives of Van Beavers himself and his wife.

On November 9, 1925, a merger agreement was entered into between the Association and the American Insurance Union, hereinafter referred to as the Union, by the terms of which the Association transferred all its assets to the Union, which company assumed the liabilities of the Association, and agreed to, and did, reinsure all members of the Association who were then in good standing.

After this date the premiums on the certificates issued to Beavers and his wife and mother were sent, by direction of the Union, to Fred Van Wagner, at Mena, Arkansas, which had been the home office of the Association, and Van Wagner, after receipting for such payments, remitted them to the home office of the Union, which is in Columbus, Ohio.

The rules of the Association required that payments should be remitted by the 20th of the month in which

the premium was payable, but Beavers testified that he rarely remitted earlier than that date, but oftener later, and that some of his remittances had been as late as the 10th of the following month, and that none of these payments had been refused and the certificates had never been declared lapsed.

It was the custom of Beavers to include in a single remittance the premiums on his own policy and that of his wife, and on both of the certificates of his mother, but he failed to make the remittance to cover the premiums for July, 1926, until the 2d day of August. Upon the receipt of the remittance to cover the July assessments, he was notified that it would be necessary to sign and return reinstatement blanks, which were inclosed for that purpose, before the premiums would be received.

Mrs. Beavers was unable to write, and her son attended to all her correspondence, and had charge of her insurance and the payment of her premiums, and on the 7th day of August the reinstatement blanks were filled in and returned. Those relating to the certificates of Mrs. Beavers were signed by her by mark, and the signature was not witnessed by the person who had signed her name.

In the meantime, notices had been mailed from the Mena office calling for the August premiums. Mrs. Beavers sent sufficient money to pay the July premiums and the reinstatement fees, and later paid the August premiums. This remittance was made on August 7, 1926, and pinned to the reinstatement applications was a note to the effect that, unless all the certificates were reinstated, none should be, and it was requested that the money for this purpose be returned if all the certificates were not reinstated. It is not questioned that Beavers and his wife were reinstated, and they thereafter continued to pay their premiums for a period of several months. The money to pay the August premiums on all the certificates was duly received, and these premiums were marked "paid" by the Union on August 14, 1926.

Mrs. Mary E. Beavers died August 14, 1926, and proof of her death was duly made and received by the Union on August 30, 1926, whereupon Mr. Beavers was advised that his mother had not been reinstated, and on this ground liability on her certificates was denied. Thereupon this suit was brought, and a verdict in favor of the Union was directed by the court, and from the judgment accordingly is this appeal.

It was shown at the trial that all the premiums for both July and August had been marked ''Paid'' on August 14, 1926, and that the money covering these premiums, as well as the reinstatement dues on Mrs. Beavers' certificates, were retained by the Union until October 12, 1926, at which time they were returned. This suit was begun about that time.

The constitution and by-laws of the Union provide that a member may be reinstated on application, without a medical examination, upon signing an application for reinstatement and the payment of a reinstatement fee, after the approval of the application by the medical examiner of the Union. If a member became delinquent and remained so for as much as six months, a medical reexamination was required before reinstatement.

The application for reinstatement contains the recital that: ''For the purpose of securing reinstatement I hereby covenant and warrant that I am now in good health, of sound mind, and free from physical deformities; that I am not now nor have I ever been addicted to excessive drinking of alcoholic beverages, nor the use of narcotic drugs.'' The application required the applicant to answer specifically certain questions concerning his or her health, and concludes with the following recitals:

''It is understood and agreed between the undersigned and his beneficiary or beneficiaries and the American Insurance Union that this application for reinstatement and the statements, covenants and warranties contained herein shall be a part of my contract of membership and insurance with said society, and that, if this

application for reinstatement and the statements, covenants and warranties herein made be false or untrue in any particular, then the policy reinstated in consequence of this application for reinstatement shall be null and void, and said society shall not be liable to me or my beneficiary or beneficiaries therein, except for the return of the premiums paid thereafter. It is further agreed and understood that the accepting and receipting for my premium or chapter dues or reinstatement fee by the chapter, or cashier, or any chapter officer or national officer, or representative, or any person whomsoever, shall not have the effect of reinstating me, or rendering my policy valid, until the application for reinstatement has been forwarded to the national office and approved.''

This application was signed as to each of the certificates held by Mrs. Beavers, and both were signed by her, by her mark.

The truth or falsity of the statements made in the name of Mrs. Beavers concerning the then condition of her health is not discussed in either of the briefs.

The medical director, whose duty it was to pass upon and reinstate delinquent applicants, testified that he was temporarily absent from his office when these applications were received, and that they were never passed upon or approved by him, and that he would not have approved the application of Mrs. Beavers without making some investigation of the signature of the applicant, which was not attested by the person who had signed Mrs. Beavers' name. He also testified that, as the answers to the questions contained in the application showed that Mrs. Beavers had consulted a physician because of an attack of chills, he would have asked for further proof as to her health before ordering the reinstatement, and that such investigations ordinarily required about ten days or two weeks, and that the application was first submitted to him upon his return to his office on August 21, 1926.

Appellant insists that the judgment of the court below should be reversed for several reasons.

(1). That it was not shown that an authorized assessment had been made, and it is therefore insisted, upon the authority of the case of *Mutual Aid Union* v. *Perdue,* 162 Ark. 551, 258 S. W. 375, that there was no delinquency.

It appears that the Association had the same provision in its constitution and by-laws for levying assessments as the Mutual Aid Union had in the Perdue case, *supra,* whereunder assessments were not levied unless the death of a member made that action necessary, but it is shown here that the Association had been absorbed, and it was not made to appear that, since the consolidation, the right to make assessments was dependent upon the death of a member, or that the directors of the Association, whose duty it was, under the constitution of the Association, to levy the assessments, had been continued in existence as functioning officers. On the contrary, as we understand the record, it was the duty of the certificate holders, after the consolidation, to make monthly payments not later than the 20th of each month. If we are mistaken in this, the fact may be more fully developed on the remand of the cause, which is ordered for another reason.

(2). It is next insisted that the facts and circumstances summarized above support the inference that Mrs. Beavers had, in fact, been reinstated; but we do not agree with counsel in this contention.

(3). It is also insisted that the Union is estopped by its conduct from asserting a forfeiture, or, at least, that the jury might have so found, and in this contention we think counsel for appellant are correct.

It was shown that Mr. Beavers had charge of the four certificates and paid the premiums on all of them, and that, when he remitted the amount necessary to reinstate all of them, he directed that none of them should be reinstated unless all were reinstated. This letter was addressed to the home office, and in due course would

have had the attention of the medical director, whose duty it was to pass upon applications for reinstatement. Mr. Beavers, for himself and as the agent of his wife and mother, had the right to stipulate that no one of the certificates should be reinstated unless all of them were, and, unless the officers of the Union having the matter in charge were willing to follow this direction, they had no right to appropriate any part of this conditional tender. It is an undisputed fact that Beavers and his wife were reinstated, and if the jury should find (as we must assume would have been done, in view of the fact that a judgment in favor of the Union was pronounced upon a verdict directed in its favor by the court), that this condition was imposed in the remittance letter, the acceptance of any part of the tender was an acceptance of the condition under which the tender was made. In this connection, it may be recalled that the Union did not return the money tendered to reinstate the certificates of Mrs. Beavers until in October, after her death in August.

It is also insisted for the reversal of the judgment that the Union is estopped, through its conduct in receiving belated premiums, from asserting a forfeiture resulting from a payment not longer delayed than the payment of other premiums had been delayed, which had been accepted without question. We are of the opinion that the testimony raises this question. According to Mr. Beavers, none of his payments had been made before the 20th of the month, and some had been made even later than the one here in question.

In the case of *Sovereign Camp W. O. W.* v. *Newsom*, 142 Ark. 132, 219 S. W. 759, 14 A. L. R. 903, it was said:

"The law applicable to such a state of facts is accurately stated in case-note (in 11 Ann. Cas. 533) to *Trotter* v. *Grand Lodge*, 132 Iowa 513, 109 N. W. 1099: 'Where a mutual benefit association has, in repeated instances, received from a member the payment of overdue assessments so as to establish a custom or course of dealing between the parties and led the member to believe that a strict observance of a requirement as to the time of pay-

ment is not required, it is held that the certificate of insurance is not forfeited by failure to pay an assessment at the time when the by-laws of the society or a stipulation in the certificate requires it to be paid, and that a provision for forfeiture for nonpayment at such time is waived within the customary period of extension of the time of payment.' Numerous cases are cited to support the text (Citing cases).''

In the opinion on rehearing in the Newsom case, *supra*, it was pointed out that, while a subordinate collecting officer of a fraternal benefit society might not waive the provisions of the constitution and by-laws, the society might be estopped through the action of such officer from asserting a forfeiture, and the doctrine of that case is applicable here. The jury might have found that, while Van Wagner could not waive the provision requiring that payments be made on or before the 20th of each month, the insurer might, by knowingly accepting payments made after that date to its agent, estop itself from asserting that the payments had not been made as required, when they were in fact made as early as other premiums, which, though not made in time, had been accepted.

We conclude therefore, for the reasons stated, that the court was in error in directing a verdict against appellant, and the judgment will therefore be reversed, and the cause remanded for a new trial, and it is so ordered.

KIRBY, J., dissents.