SOVEREIGN CAMP, WOODMEN OF THE WORLD, v. MAYS.

4-4995

Opinion delivered March 28, 1938.

H. L. Ponder, Jr., and H. L. Ponder, for appellant.

Eric V. Hoyt and Richardson & Richardson, for appellees.

DONHAM, J. Appellee, Mrs. Pearl Mays, recovered judgment in the Randolph circuit court against appellant in the sum of $1,000 on an insurance policy issued by appellant on the life of her husband, R. Lee Mays, now deceased, and in which policy appellee was named as the beneficiary. Appellee prayed for the allowance of a reasonable attorney's fee and a 12 per cent. penalty to be taxed as costs. The prayer for attorney's fee and penalty were disallowed by the trial court, over the objection and exception of appellee. Appellant appealed from the judgment in favor of appellee; and appellee prayed and was granted by this court a cross-appeal from the

judgment of the trial court disallowing attorney's fee and penalty.

The question involved here is whether or not the deceased kept the monthly premiums paid on his policy so that the policy was in force at the time of his death. It was alleged that the deceased died February 11, 1937. He died a few minutes after midnight either on the 10th or 11th of. February. The record is not certain as to whether it was on the 10th or 11th; however, the view we have taken makes it unimportant as to which of the two dates is correct. Deceased was an agent of appellant and had been engaged for sometime prior to his death in writing insurance for appellant. He received from appellant monthly checks in payment of his commissions on the insurance written by him. On the morning of February 9th, he left his home in Randolph county to go to Jonesboro, telling his married daughter, Mrs. Lillian Brooks, that he wanted the check which he was expecting through the mails from appellant in payment of his insurance commissions to be used in paying his dues. The daughter testified that when the check came she took it and went to the office of one Shively, clerk of the local Woodmen Camp at Pocahontas, and told him she wanted to pay the January dues and also wanted to pay some in advance. The clerk helped her figure the amount of the dues and she paid same, paying all that the clerk told her was necessary. The clerk issued to her a receipt for the amount she paid, showing that the payments were for the months of January and February, 1937. The clerk told her that her father was in good standing. The said Shively, testifying as a witness, stated that the payments made by the daughter of the deceased were made on February 10, 1937. He admits that he gave her receipts showing payments for the months of January and February, 1937; but says he knew at the time that the insured, Lee Mays, was in arrears for the month of December, 1936. He stated, while he knew the insured was in arrears for the month of December, that rather than have an argument with the lady he executed the receipts to show payment for the months

of January and February. It was shown by the evidence that the deceased, as agent of the appellant, was furnished from month to month a statement of all members of Woodmen lodges in his jurisdiction, that is, the territory in which he wrote insurance for appellant; and that the statement received in January, 1937, showed that deceased was in good standing, that is, his dues had been paid for the month of December, 1936. It was further testified by Shively, the local camp clerk, that the records of the appellant showed that the deceased was in good standing, that is, he had paid his dues for the month of December, 1936. But Shively said this was due to a mistake; that the deceased carried two policies; that the policy sued on in this case was shown by the records of appellant to be in good standing for the month of December, 1936; and that the other policy carried by deceased was shown not to be in good standing. Whereas, the reverse was true. That is, that the policy in question in this suit should have been shown by the records of the appellant to have been lapsed for nonpayment of the December, 1936, dues; and that the other policy carried by deceased should have been shown to have been in good standing. It was shown that after the death of the deceased, Shively, the local camp clerk, procured from the appellee the receipt which he had given the daughter of the deceased when she paid her father's dues either on the 9th or 10th of February; and that he changed it to show that it was a receipt for the months of December, 1936, and January, 1937. Under these circumstances, as shown by the record, we hold that it was a jury question as to whether the dues of the deceased had actually been paid for the month of December, 1936.

At the conclusion of the evidence both parties asked a peremptory instruction; and the court thereafter sitting as a jury found that appellee was entitled to recover the amount of the policy. If the state of the record is such, and we believe it is, that it was a jury question as to whether the dues for the month of December, 1936, had been paid, then the finding of the court that appel-

lee was entitled to recover settles this question in favor
of appellee. In determining whether the evidence is suf-
ficient to sustain the judgment of the court, it must be
construed in its most favorable light to appellee; and it
is the duty of this court to give thereto its greatest pro-
bative value in her favor with every reasonable infer-
ence deducible therefrom. The fact that the records of
the appellant showed that the December dues of the de-
ceased had been paid; the fact that a statement was
mailed to him showing the members in good standing in
the territory in which he wrote insurance, and that this
statement showed the deceased in good standing for the
month of December, 1936; the fact that the daughter of
deceased applied to the camp clerk to pay the dues for
the months of January and February, 1937, and was
given a receipt by the camp clerk for the months of Jan-
uary and February; the fact that at the time the clerk
told the daughter of deceased that her father was in
good standing; the fact that after the death of the de-
ceased the clerk procured the receipt which he had given
deceased's daughter and changed it so as to show that
it was a receipt for the months of December, 1936, and
January, 1937; and the fact that deceased had not been
notified that he was delinquent for the month of Decem-
ber, 1936, it being the custom of appellant to notify all
delinquent members, were all such that the jury, had
the case been tried with a jury, would have been entitled
to consider in determining the question of whether the
deceased was in good standing for the month of Decem-
ber, 1936. Since the case was taken from the jury and
tried by the court, these are facts which the court had a
right to consider in determining whether the policy had
lapsed for failure to pay dues. Furthermore, the daugh-
ter testified that she made the payments to the camp
clerk after her father returned from Jonesboro and a
few hours before he became ill.

Appellant had a rule requiring members to pay their
dues for the current month on or before the last day of
the month; but there was a general custom by which
members were permitted to pay at any time before the

camp clerk was required to make his report to the head camp. The evidence shows that he was required to make this report on the 15th of the month for the dues that had been paid by members of the camp for the previous month.

In the case of *Sovereign Camp, W. O. W.* v. *Newsom*, 142 Ark. 132, 219 S. W. 759, 14 A. L. R. 903, the court held that the conduct of the camp clerk, he being the agent of the company and having the same position as did the camp clerk, Shively, in the instant case, in accepting premiums contrary to the by-laws of the company, clearly estopped the company from asserting that the policy lapsed for failure to pay premiums at the time required by the by-laws. This same holding has since been approved in a great number of cases. *Sovereign Camp, W. O. W.,* v. *Key,* 148 Ark. 562, 230 S. W. 576; *Eminent Household of Columbian Woodmen* v. *Simmons,* 150 Ark. 325, 234 S. W. 182; *Sovereign Camp, W. O. W.,* v. *Richardson,* 151 Ark. 231, 236 S. W. 278; *Sovereign Camp; W. O. W.,* v. *Pearson,* 155 Ark. 328, 244 S. W. 344; *Eminent Household of Columbian Woodmen* v. *Heifner,* 160 Ark. 624, 255 S. W. 29; *Home Life & Accident Co.* v. *Scheuer,* 162 Ark. 600, 258 S. W. 648; *Beavers* v. *American Insurance Union,* 176 Ark. 81, 2 S. W. 2d 680; *Columbian Mutual Life Insurance Co.* v. *High,* 188 Ark. 798, 67 S. W. 2d 1005; *Order of Railway Conductors of America* v. *Skinner,* 190 Ark. 116, 77 S. W. 2d 793; *Reserve Loan Life Insurance Co.* v. *Compton,* 190 Ark. 1039, 82 S. W. 2d 537; *United Friends of America* v. *Avery,* 192 Ark. 620, 93 S. W. 2d 652.

In the Avery case, last above cited, this court quoted with approval the exact rule laid down in the Newsom case above cited, as follows: ''Forfeitures are so odious in law that they will be enforced only where there is the clearest evidence that such was the intention of the parties. If the practice of the company and its course of dealings with the insured and others known to the insured have been such as to induce a belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted on, the company will not be allowed to

set up such a forfeiture, as against one in whom their conduct has induced such belief.''

It will be seen from the rule announced by this court in the above-cited cases that if the deceased had paid his dues for the month of December, 1936, and under the evidence we hold that this was a jury question, then he was not delinquent in the payment of his dues for the month of January, for they were paid not later than the 10th of February, the evidence being conflicting as to whether the dues were paid on the 9th or the 10th of February. Under the custom that was shown to exist and which was in general force and effect, he had until the 13th or the 14th of February to pay the January dues, because the clerk was not required to make a report to appellant until the 15th of the month.

The cross-appeal herein raises the question as to whether appellee is entitled to recover a reasonable attorney's fee and a penalty of 12 per cent. The prayer of appellee for the penalty and attorney's fee was denied. If the appellant is a fraternal benefit society, it is not liable for the penalty and attorney's fee. On the other hand, if it is no different from that of the ordinary old line legal reserve life insurance company, it is liable for the penalty and attorney's fee. A fraternal benefit society is defined by Pope's Digest, § 7854, as follows: ''Any corporation, society, order, or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit, and having a lodge system with ritualistic form of work and representative form of government, and which shall make provision for the payment of benefits in accordance with § 7858 is hereby declared to be a fraternal benefit society.''

This court held in the case of *Modern Woodmen of America* v. *State*, 193 Ark. 458, 103 S. W. 2d 38, that the fact that appellant paid its officers and agents substantial salaries, and issued to its members such policies as are ordinarily issued by an old line insurance company, and was engaged in building up a reserve so as to make and keep it solvent, did not determine the status of

the appellant so as to deprive it of its characteristics as a fraternal benefit society. The evidence in said case shows that the Modern Woodmen of America is similar in many respects to the Woodmen of the World, appellant in the instant case. We adhere to our holding in said case. The Arkansas statute, Pope's Digest, § 7857, provides that fraternal benefit societies shall be exempt from all provisions of insurance laws of the state, not only in governmental relations with the state, but for every other purpose, and that no law enacted shall apply to them unless they be expressly designated therein. We, therefore, hold, appellant being a fraternal benefit society, that appellee was not entitled to recover a penalty or attorney's fee.

It follows from what we have said that the judgment on both the direct and cross-appeal must be affirmed. It is so ordered.