Industrial Mutual Indemnity Company v. Thompson.

Opinion delivered July 22, 1907.

1. Appeal—taking inconsistent positions.—Where a cause was tried below upon the theory that the policy sued on had been forfeited, but that the forfeiture was waived, it is not admissible on appeal to raise the issue that the policy had not been forfeited. (Page 582.)

2. Insurance—forfeiture—authority of agent to waive.—A superintendent of agencies of an insurance company who is authorized to adjust and settle claims against the company is authorized to waive a forfeiture for nonpayment of premiums, though the policy provided that this could be done only by writing signed by the president, vice president or secretary. (Page 582.)

3. Same—when forfeiture waived.—Where a superintendent of agencies of an insurance company made a settlement of an insurance loss by paying a part of the claim, he will be held to have waived a prior forfeiture. (Page 583.)

4. Release—fraud.—A release or acquittance procured by fraud is not binding. (Page 584.)

5. Same—deduction of consideration.—Where a release of the insurer's liability on a policy was obtained by fraud, the beneficiary was not required, as a prerequisite to the maintenance of his suit, to

tender the consideration paid for such release; but the amount so paid could be deducted at the trial from the amount to which the beneficiary was entitled. (Page 584.)

Appeal from Phillips Circuit Court; *Hance N. Hutton,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellee's mother, Margaret Johnson, was insured with appellant company for $210, provided that at the time of her death all dues and assessments due the company were paid. The complaint of appellee alleged that Mrs. Johnson died on March 18, 1906; that all dues and assessments were fully paid; that appellant had paid $28.50, and refused to pay the balance. Judgment was asked for $181.50. Appellant answered and admitted that, in consideration of weekly payments of fifty cents to be paid appellant on or before each Monday during the continuance of the contract, it had insured Mrs. Johnson in the sum claimed. Appellant admitted that appellee was the beneficiary, and admitted the death of the assured. Appellant set up in defense that the policy provided that, "if any payment shall be in arrears more than four weeks, the policy shall become void, and the payments already made be forfeited to the company." It was also provided that the condition which avoids the policy shall not be waived by the acceptance of payments in arrears. Appellant alleged that Mrs. Johnson at the time of her death had failed to make weekly payments for seven weeks, from January 29, 1906, to March 14, 1906, when appellee sent to an agent of appellant the sum of $4. Appellant also set up a written receipt signed by appellee and delivered to appellant acquitting appellant of all further liability.

Appellee replied to the answer, alleging that she was an ignorant negro woman, and knew nothing of the rules governing transactions set forth in the receipt which appellant holds, and averring that appellant, well knowing her ignorance of such transactions, represented to her that the policy had lapsed and was void because her mother had failed for more than four weeks to make payments of dues; that appellant advised her that it would be for her best interest to accept the $28 and execute the receipt. Appellee further alleged that the representations

were made by the general agent of the company for the fraud-
ulent purpose of deceiving and depriving appellee of the benefit
of the proceeds of the policy; that the representations were false
and known to be false at the time they were made by the agent
who made them; and that she, being ignorant of the facts and
believing that the agent was advising her for her best interests,
acted upon such advice in signing the receipt. She alleged that
the receipt, by reason of the false and fraudulent representation,
coercion and undue influence of appellant in causing her to exe-
cute same, was without consideration as an acquittance for a
larger sum than $28, and did not bar appellee's right to recover
the balance claimed.

The appellee proved that her mother had a policy in ap-
pellant company, that appellee was the beneficiary. Appellee
paid the dues for her mother. She lived at Marvel, in Phillips
County, and would pay dues to the agent McCain when he came
out from Helena to collect same. That she paid in advance
sometimes two or three dollars at a time when the agent would
come out and ask for it. The last payment she made before the
death of her mother was January 29th. Her mother died March
18. On the 14th of March she received a letter from the agent,
McCain, who had been collecting the dues, in which he said:
that there were such a few out there he wouldn't come any more
to collect, and for appellee to send him four dollars, and he
further wrote: "I will never allow it to run out." The next
day appellee sent the money. She says that McCain said that
four dollars were then due.

It was shown the amount received for dues was entered in
a book, and that according to this the last payment of dues be-
fore the four dollars were sent was on January 29, when ap-
pellee paid fifty cents. Appellee executed to appellant a receipt
for $28 "in full settlement of all claims and demands" against
appellant arising under the policy sued on. Appellee details
the circumstances under which the receipt was executed as fol-
lows: "When the agent came, I asked him, 'Is my mama all
right? There is nothing behind now is there, and you will pay
the money, won't you?' And he said, 'Of course, we will pay the
money. You come in Saturday, and the money will be in my
office.' When I got there, he had a great long letter stating that

my mother was unfinancial, and he told me: "The best thing you can do is to take what you paid in for your mother, because you can't get nothing else.' I thought he was telling me the truth about it, is the reason I took it. He advised me as a friend, and said, inasmuch as it was me he would pay the amount I had paid in, said that was the best I could do, and all I could get, and I relied upon his word and signed the paper because I didn't know nothing else to do." Appellee testified that she was a colored woman. The appellant introduced the policy which contained the following conditions:

"3. If any of the statements or warranties herein referred to, and upon which this policy is granted, be not true, or if the conditions of said policy be not in all respects observed, or if this policy shall be in arrears more than four weeks, this policy shall thereupon terminate or become void, all payments paid shall be forfeited to the company except as provided herein, and it is expressly stipulated and agreed that the foregoing provisions, which avoid the policy, in case any payment shall be in arrears more than four weeks, shall not be considered in any respect waived by any act of grace by the company in the acceptance of payments in arrears more than four weeks upon this or any other policy."

"4. The contract between the parties hereto is completely set forth in this policy and the application therefor, taken together, and none of its terms can be varied or modified nor any forfeiture waived, except by agreement in writing signed by one of the following officers, namely the president, vice president, secretary, whose authority will not be delegated; no other person has or will be given authority. Therefore agents, which terms includes superintendents and assistant superintendents, are not authorized, and have no power, to make, alter, or discharge contracts or waive forfeitures or receive payments on policies in arrears more than four weeks, or to receipt for same in the receipt book, and all such arrears given to an agent shall be at the sole risk of those who pay them, and shall not be credited upon the policy, whether entered in the receipt book or not."

Appellant introduced the receipt book in which the payments were entered from time to time as they were made, showing that the last payment was made as above mentioned, and con-

taining this recital: "Agents are required to call with regularity for the weekly payments, but an omission to do so will not be an excuse for your policy being in arrears. * * * All moneys paid at the time of application for membership and every subsequent payment must be entered in this book."

Witness Metlock on behalf of appellee testified that he was in the employ of appellant from October 26, 1904, to April 20, 1906; that he was the superintendent of agencies, and his duties were also to solicit for business, to collect premiums on same, and to adjust and settle claims. McCain was an employee of the appellant at the same time. He turned over to witness Metlock money received by him from one Florence Thompson or Margaret Johnson as dues and assessments on the policy sued on. This money, all, except the four dollars which was collected after the policy had been cancelled, was turned over to appellant company to be credited on the policy as dues. He did not turn over the four dollars because that was received after the policy had lapsed, and it was the instructions of appellant to hold such money until official notice was received from the company that same had been received and placed upon the company's books, and in this instance the holder of the policy died before he had forwarded revival application to the company at Little Rock.

The duties of McCain were to solicit for new business and to collect premiums on policies of insurance as long as they were in force, or until the dues were four weeks or more in arrears. The witness in regard to the receipt testified as follows:

"On the day of appointment Florence Thompson came to my office, and I told her that I had a letter from the company, and showed her the letter. I further told her the policy on her mother had been cancelled for non-payment of dues, and that the company was not liable in any way under the same, and read to her clause "four" in the policy, showing her why the company was not liable, etc. She then said that she owed a funeral bill, etc. And that she thought that, if we would give her her money back, she could satisfy the undertaker, etc. I then counted up what had been paid on the policy and gave it to her—twenty-eight dollars in all—explaining to her that the company was donating the amount only, as we owed her nothing. I then read the receipt, which she afterwards signed and which is attached

hereto, to her, and gave same to her to read for herself, and explained fully that she was signing a receipt in full against all claims against the company under her mother's policy. She said she was glad to get twenty-eight dollars, as she realized fully that she was entitled to nothing, and, thanking me for my kindness, etc., went out. As agent of the company, I received from Florence Thompson a receipt, which I file with my deposition."

The contents of the receipt are set forth. Instruction No. 2, given by the court, was as follows: "You are further instructed that if you find from the evidence in this case that one or more of the defendant's agents made false representations of fact to plaintiff, or used fraud or deceit in inducing her to sign the receipt introduced in evidence, or used undue influence upon her to induce her to sign same, and she, believing that such representations were true, was induced thereby, or by fraud, deceit, or undue influence, to sign same, such receipt will not estop plaintiff from recovering whatever amount be found due her under the terms of the contract of insurance."

The instructions will be referred to in the opinion.

The verdict and judgment were for $182, and this appeal followed.

*Jacob Fink,* for appellant.

1. By the terms of the policy, it automatically came to an end and became void when the dues were more than four weeks in arrears; and thereafter it could only be reinstated in the manner provided in the policy. No special agent, nor other person except one of the officers mentioned in the policy, had authority to waive a forfeiture. 75 Ark. 24; 187 U. S. 353; 60 Ark. 532; 62 Ark. 353; 13 Misc. Rep. (N. Y.), 395; 76 Tex. 653; 52 S. E. 536; 19 Atl. 386; 3 S. W. 296; 54 Ark. 78. The Goyne case, 96 S. W. 365, differs from this in that in that case the agent was acting within the apparent scope of his authority. After forfeiture of a consummated contract, the assured can not claim a waiver unless he can show that he has paid a valuable consideration therefor, or that he was prejudiced by the insurer or its agents acting within the real or apparent scope of their authority. 7 N. Y. 530; 14 Allen (Mass.), 329; 21 Pick. (Mass.), 162; 2

Denio (N. Y.), 81; 125 Mass. 274; 66 N. Y. 464; 26 S. E. 628; 1 May on Ins. 245.

2. The second instruction, given at appellee's request, was abstract and misleading, permitted the jury to decide a question, not of fact, but of law.  14 Am & Eng. Enc. Law (2 Ed.), 205.

3. A statement by Metlock that the policy was invalid, could not be construed as fraudulent, even if false, unless it were shown that he at the time knew that it was false.  22 Ark. 454; 23 Ark. 289; 31 Ark. 170; 38 Ark. 334.

In the absence of fraud, one who has the means at hand of ascertaining the truth can not rely upon the statements of the other party.  Ubi supra; 16 Ark. 114; 26 Ark. 28; 46 Ark. 245; Id. 337; 47 Ark. 148.  His statement that the policy was void, and that nothing could be collected thereon, was an expression of opinion only, and not a fraud.  31 Ala. 428; 66 Ala. 206; Id. 590; 50 N. Y. 480; 1 Ark. 31; 6 Ark. 513.  See also 112 N. Y. 467; 55 N. Y. 400; 98 N. C. 89; 46 Am. Rep. 357; 101 S. W. 1125; 61 Mo. 354; 35 Mo. App. 426; 33 Ohio St. 283; 23 Mich. 105.

4. Before appellee could maintain her action, she must have returned, or offered to return, the money received by way of compromise.  62 Ark. 274; 86 N. Y. 75; 59 Ark. 259; 17 Ark. 240; 61 Fed. 54; 64 Fed. 293; 53 Fed. 569; 66 N. Y. App. Div. 398.

W. G. Dinning, for appellee.

1. The law does not favor forfeitures; and where a forfeiture is relied on as a defense, the facts and circumstances causing such forfeiture must be clearly proved by positive evidence. Failure for more than four weeks to pay premiums in this case is not sufficiently shown.

2. But, if there was a forfeiture, it was waived by its agent, Metlock, acting with the apparent scope of his authority, who testified that he was a superintendent of agencies, authorized also to solicit business to collect premiums on same and to adjust and settle claims.  96 S. W. 365; 98 S. W. 694.

3. The release receipt procured from appellee was not binding because of fraud in procuring it.  Whether or not there was fraud practiced in procuring it, was a question of fact for

the jury, and their verdict is conclusive.  76 Ark. 97; 14 Am. & Eng. Enc. Law, 206; 99 S. W. 687.

4. Appellee, under the circumstances of this case, was under no obligation to return, or tender back, the money obtained by way of compromise before bringing suit.  99 S. W. 68; 73 Ark. 42; 100 S. W. 884.  Moreover, this question can not properly be raised here for the first time.

WOOD, J., (after stating the facts.)  1.  Appellee contends here that the proof does not show that the policy was forfeited on account of the nonpayment of dues.  But appellee tried the case in the court below upon the theory that the policy had been forfeited, but that such forfeiture was waived by the act of appellant's agents in receiving the dues after the forfeiture for nonpayment.  No issue was made in the court below as to nonforfeiture, and none could be made here.

2.  The court instructed the jury at the instance of appellee that if the forfeiture resulted from the nonpayment of dues, and was known to the agent of appellant, and if such agent thereafter received and collected the amount of the dues in arrears, this would constitute a waiver of the forfeiture.  The court further instructed that: "If the plaintiff relies for recovery on the defendant waiving the forfeiture on account of the nonpayment of assessments for a longer term than four weeks, the plaintiff must show by a preponderance of the testimony that the defendant authorized said waiver by its agents or ratified the act of its agents in waiving said forfeiture."

The appellant contends that the instructions were erroneous tor the reason that the agents who collected and held the money were not authorized, under the terms of the policy, to collect the assessments and thereby waive a forfeiture after same had occurred, but that they were expressly prohibited from waiving such forfeiture.  Appellant contended that a waiver of this kind under the express provisions of the policy could only be effected "in writing signed by either the president, vice-president or secretary."  Appellant asked instructions in conformity with its contention, which the court refused.  Appellant relies upon the authority of *Fidelity Mutual Life Ins. Co.* v. *Bussell,* 75 Ark. p. 25, for reversal on the issue of waiver of forfeiture.  But in that case the facts were different.  The waiver in that case was

by a mere local agent, who had only power to solicit insurance and collect premiums. If the waiver in this case had been by McCain, who was a mere local agent with authority to solicit insurance and collect premiums, the analogy would be perfect, and *Fidelity Mutual Life Ins. Co. v. Bussell, supra,* would control. But here, after the past-due assessments were received by McCain, he forwarded same to Metlock, who accepted same. He, Metlock, was "the superintendent of agencies." While the duties of that position are not more particularly explained, it indicated far more than mere local power, and, for aught that the proof shows to the contrary, may have embraced the authority and power to superintend agencies whose duties it was to pass upon applications for and to issue policies of insurance. It is a broad term, and, without more definite and specific limitations, may be taken to indicate very general powers. Furthermore, Metlock had power, and it was his duty, to adjust and settle claims. This would certainly include authority to waive a forfeiture. The proof certainly showed that he had authority to adjust and settle claims. For he undertook to settle her entire claim for the sum of $28.50, giving her this amount and taking her receipt "in full settlement of all claims and demands against" the company "arising under or by reason of the policy." The receipt itself shows that Metlock had power to waive a forfeiture. For how could he adjust and settle a claim of $210, that had been forfeited, for $28.50 unless he had the power to waive the forfeiture? The very fact that he settled the claim, as he supposed he had done, shows that he had waived the alleged forfeiture. One can not settle a forfeited claim without waiving the forfeiture. It would involve a contradiction in terms. It is not pretended by appellant that Metlock did not have authority to "adjust and settle claims." This being true, appellant can not be heard to say that he did not also have authority to waive forfeitures. The instructions should have told the jury that the waiver could only have been made by an agent acting within the scope of his authority. But, as the uncontroverted proof showed that Metlock was acting within the scope of his authority in making the waiver, the giving of the instructions without the qualification indicated was not prejudicial. The case is ruled on this point rather by the principles announced in *Queen of Arkan-*

*sas Fire Ins. Co.* v. *Cooper-Cryer Company,* 81 Ark. 160, than by *Fidelity Mutual Life Ins. Co.* v. *Bussell, supra.*

2. The court was warranted, from the circumstances set forth in the statement of facts, in submitting to the jury the question of whether or not the receipt which appellant obtained from appellee in full acquittance of her claim was a fraud upon her rights. The question as to whether or not the receipt was fraudulently obtained was properly submitted in appellee's instruction number 2. It was a jury question.

3. The jury having determined, upon evidence sufficient here, that the receipt was fraudulently obtained and therefore void, it was not a prerequisite to the maintenance of appellee's suit that she should have tendered to appellant the amount she had been paid. *St. Louis, I. M. & S. R. Co.* v. *Smith,* 82 Ark. 105, and authorities cited. The jury made a deduction in their verdict of the amount that had been paid. Moreover, the question is raised here for the first time. It could not avail also for that reason.

We find no prejudicial error, and the judgment is therefore affirmed.