MUTUAL AID UNION   v.   PERDUE.

Opinion delivered February 18, 1924.

1.  APPEAL AND ERROR—DIRECTED VERDICT.—Where the court directed a verdict upon conflicting evidence, the court on appeal will presume that the jury would have found against the party for whom the verdict was directed.

2.  INSURANCE—FAILURE TO PAY ASSESSMENTS.—Where the constitution and by-laws of a mutual assessment company provided that the assessments should be made by the board of directors, an assessment by the secretary was unauthorized, and a member was not in default in failing to pay such assessment.

Appeal from Ashley Circuit Court; *Turner Butler,* Judge; affirmed.

*J. V. Walker* and *Norman & Amsler,* for appellant.

In excluding, on the motion of plaintiff, testimony regarding any assessment or dues, either of Nos. 10, 11 or 12, and, by its instructed verdict, the court invaded the province of the jury, and excluded evidence that has been held competent by this court.  125 Ark. 449.  The burden was on the appellee to show that all the conditions of the contract had been performed.  98 Ark. 338.  There is a presumption that the secretary acted on authority of the board of directors.  Thompson Corp. (2nd ed.), par. 1608; Elliott on Private Corp. 667; 54 N. E. 433; 6 L. E. 552; 7 R. C. L. 455; 40 N. E. 799; 50 N. E. 665.  In order to construe a contract of insurance, the primary object is to arrive at the intention of the parties in making the contract.  89 Ark. 471; 94 Ark. 417; 97 Ark. 425; 118 S. W. 211; 29 Cyc. 66.  The fact that there is no formal record of the action of the board of directors does not necessarily render an assessment illegal.  This is true even though there is in fact no action taken by the board. 123 S. W. 973.

*Compere & Compere,* for appellee.

Proof of mailing a notice is not a conclusive fact of notice.  130 Ark. 12.  It was not necessary to produce the records of the corporation showing the assessment.  22

C. J. 1011; R. C. L. p. 154, § 125.   There can be no for-
feiture without an assessment by the board of directors.
85 Ky. 1, 7 Am. St. 571; 19 Am. St. 784; 52 Am. St. 572;
51 Ark. 447; 229 S. W. 407; 226 S. W. 615; 19 R. C. L. p.
1261, § 65; 194 S. W. 956.

Smith, J.   On June 24, 1916, Mattie Perdue made
application to the Mutual Aid Union, a mutual assess-
ment company, hereinafter referred to as the company,
for a certificate of membership.   John T. Perdue, her
husband, acted for her in making the application for
membership, and signed her name to the application, and
was designated in it as the party to whom all notices of
assessments against her should be mailed in case she
became a member.

The application was accepted, and the company
issued to Mrs. Perdue a certificate of membership No.
837, having a maximum value of a thousand dollars,
and placed her in Circle No. 40.   Mrs. Perdue died on
January 17, 1921, and the company refused, on demand,
to pay the claim of her husband, the beneficiary named
in the certificate, and this suit was brought to recover
the sum payable under the certificate.   The trial resulted
in a verdict for the plaintiff, which was returned under
the direction of the court, and, judgment being rendered
accordingly, the company has appealed.

The company refused to pay the claim of the bene-
ficiary on the ground that the insured was not a member
at the time of her death, the company claiming that she
had forfeited her membership because of her failure to
pay an assessment, No. 10, issued October 19, 1920, in
the sum of 88 cents.   The court instructed the jury that
the proof failed to show that a valid assessment had
been made.

Appellant says the questions for decision are: (1)
Was there sufficient proof of a death upon which to
base an assessment?   (2) Was an assessment made as
provided by the contract of insurance between the
parties?

The constitution and by-laws of the company provided that notice of an assessment should be given by mailing to the insured, or to the person named in the application to receive notices, and the testimony on the part of the company shows compliance with this requirement, and, as the verdict was directed against the company, we must presume that the jury would have found that notice had been given, although the testimony is conflicting on this issue.

The system employed by the company in making assessments and in giving notice thereof was explained by the managing officers of the company, and was as follows: The company employed the card system. Each member had a membership card, ruled for a period of twelve months, and, among other things, contained the name of the member, the name of the person designated by the member to whom notices of assessments should be sent, the number and circle of the certificate of membership, the date and amount of assessments, and whether paid or unpaid. The card used by the company for giving notice of an assessment contains, among other things, the number of the assessment, the date of the assessment, the amount of the assessment, the name and address of the deceased member on account of whose death the assessment is made. This notice is signed by the secretary of the company, and gives the member instructions as to when and how to make remittance. The officers of the company testified that, in accordance with this system, notice had been mailed to appellee, but that no remittance had been made, and, after the expiration of the time allowed for payment, Mrs. Perdue's card was placed among those of the suspended members.

The secretary of the company testified that he mailed appellee, on October 19, 1920, a notice of the death of a member, Elzada Monday, of Leflore, Oklahoma, and that the assessment was numbered 10, and was for the sum of 88 cents, and that this notice was sent out by him on receipt of the proof of the death of the deceased member.

The court excluded this testimony, holding that assessments could not be made by the secretary as a clerical matter, but that assessments could only be levied by the vote and action of the directors of the company, and that, in the absence of a showing that the alleged delinquent assessment had been made by the directors, there was no valid assessment of which notice could have been given, and that, if such an assessment had not been made by the directors, there was no valid assessment of which the assured could have been given notice or was liable to pay.

The correctness of this decision depends, of course, upon the provisions of the contract of insurance. As has been said, the company is a mutual one, engaged in the business of insuring the lives of its members, who are placed in circles of not exceeding a thousand members, and, upon the death of any member, the surviving members are called upon to pay assessments, which are graduated, the first assessment paid by any member being 35 cents, and increasing 1 cent with each assessment until a maximum assessment of $1.15 is reached, after which the amount of the assessment is not further increased. The number of the assessments is, of course, dependent upon the number of deaths, and there might be a month in which there were no assessments, and there might be months in which there were more than one assessment. The purpose of the notice was to advise the members of the assessments which had been made. As a circle was depleted by deaths, the places were filled by the names of new members, it being the policy of the company to keep all circles approximately full at a number not exceeding one thousand members.

The certificate of membership made the constitution and by-laws a part of the contract of insurance, and these were offered in evidence, and it is to these writings we must turn to ascertain the rights and duties of the company and its members. The relevant portions of the by-laws read as follows:

"Section 4. The levying of an assessment shall consist of mailing notices of the death of a member in any particular circle in which the assessment is made, on the authority of the board of directors, stating the amount of the assessment due from the individual member, and, when the records of the association show that an assessment has been levied, it shall be accepted as *prima facie* evidence of the mailing of notices to all members from whom assessments are due."

"Section 6. These membership certificates shall be written in circles containing not more than one thousand members, and no equity, rights or benefits shall accrue either to the member or his beneficiary beyond his circle or the circle to which he may have been subsequently assigned. These assessments shall be made on the members in the respective circles in which the death occurs; except when there is an accumulation of deaths in any circle, the members of another circle or circles may, at the discretion of the management, be assessed incident to such excess deaths, or assessments may be made irrespective of deaths, and revenue derived therefrom shall be devoted to any purpose not inconsistent with the by-laws of the organization. All members are subject to each and every assessment made against their respective circle, at and after the date of their membership certificates."

"Section 8. When an assessment in any of the various circles has been deposited with the management of the Mutual Aid Union by the various members constituting a circle, and a death claim has been paid, the responsibility of the management of the Mutual Aid Union to its members of that circle ceases until another assessment by the management against the members surviving has been made and is received back into the treasury. It at all times being left to the discretion of the board of directors as to the manner and frequency of levying assessments, when there is an accumulation of deaths."

"Section 25. Duties of the President.—The president shall have supervision of all meetings of the Mutual Aid Union. Shall call same to order and preside; take the votes of members by yeas and nays, and shall declare the result of elections; and shall vote on any question that may come up before the body. He shall call all meetings of the board of directors, and preside in same as at regular meetings, and perform such duties as the board of directors may impose on· him."

"Section 27. Duties of the Secretary.—It shall be the duty of the secretary to keep a true and correct account of the proceedings of each meeting of the Mutual Aid Union and its board of directors. To keep accounts of the organization, to pay over to the treasurer all moneys collected by him, and take receipts therefor, or a receipt from the official depository for the funds of the Mutual Aid Union, to answer the same purpose as a receipt from the treasurer. To keep or cause to be kept a correct set of books, showing the financial condition of the organization, and be ready at all times to submit his statement to the board of directors of the condition of the organization. To collect all moneys due the organization, and turn same over to the treasurer, or the authorized depository; to sign or countersign all warrants and, checks drawn against the organization, and perform such other duties as the board of directors may see fit to impose upon him."

It will be observed that § 6 of the by-laws provides that, in the event of an accumulation of deaths in a particular circle, members of other circles may, in the discretion of the management, be assessed when that action is found necessary.

We think that, in the interpretation of the by-laws set out above, the court was correct in its holding that the levying of assessments was not a mere clerical duty which the secretary might perform, but that the authority and duty to levy assessments devolved upon the board of directors, and that a valid assessment could

only be levied by the board. The assessments were not fixed and definite and certain as to the amount to be paid, nor as to the time within which payment was to be made. Affirmative action was required to levy and validate any particular assessment, and this was a duty imposed on the directors, and the duty of the secretary was the merely clerical one of giving the assured notice of that action when it had been taken by the agency constituted for that purpose. If this is true, there was no valid assessment of which the secretary could have given notice, and the insured did not become delinquent and suspended until she had failed to discharge an assessment which had been properly levied.

It is the insistence of the company that the assessments against the member were, in reality, made when her application was accepted by the company, and that thereafter all that remained to be done was to notify the member that another member had died, and that an assessment had therefore become payable. We think this view is not correct, because it could not be known what number of assessments could be levied until the members had died and proofs of death had been made and the liability of the company had been ascertained and declared; and, as we have said, this was a function which the by-laws did not authorize the secretary to perform. It was the duty of the board of directors to determine whether a death had occurred which would impose a duty to levy an assessment. The company might have what the directors regarded as good cause for deciding that there was no liability on the certificate of some particular member, in which event there would have been neither necessity nor authority to levy an assessment.

In the case of *Stubbins* v. *State Farmers' Mut. Ins. Co. of Missouri,* 229 S. W. 407, the policy sued on was issued by a mutual company whose by-laws required the directors to levy the assessments against members to pay losses. Justice BLAND of the Kansas City Court of Appeals said that the certificate of the officers whose

duty it was to levy the assessment was not alone to afford *prima facie* evidence that the rate levied was due and payable, but that this action by the board was required for the protection of policy-holders against excessive assessments.

Appellant cites the case of *Burchard* v. *Western Commercial Travelers' Assn.*, 123 S. W. 973, in which the court held that an assessment against the members, which the insured in that case had failed to pay, was valid, although there was no formal record of the action of the board of directors in levying the assessment which the insured had failed to pay. The assessments in that case, however, were fixed in a definite sum, and were payable at regular intervals, but the court said: "In order to authorize a suspension for the nonpayment of an assessment, it is absolutely necessary that the assessment should have been made in strict accordance with the by-laws of the association" (citing a number of cases), and that, but for the by-laws which fixed the assessments in a definite sum and made them payable at regular periods, the court "would hold that the failure of the board to make the assessments at each regular monthly meeting prevented the association from suspending the assured for not paying an assessment."

In *American Mutual Aid Society* v. *Helburn*, 85 Ky. 1, 7 Am. St. Rep. 571, the insurance company operated on a plan not unlike that of the appellant company, and with a similar duty on its board of directors to levy assessments. The court said: "Thus we see that no assessment can be made on the surviving members of the society, to pay the benefits due the representatives of its deceased members, unless the assessments are made by the board of directors, or by an executive committee appointed by them for that purpose." The court further said: "Thus we see that, in making assessments by the appellant upon its members, it does not act in a judicial, but in a ministerial, capacity. Therefore no presumption can arise in favor of the regu-

larity or legality of its assessment; that the appellant's board of directors, or an executive committee appointed by them, are the only persons authorized by appellant's charter to make assessments against its surviving members to pay the benefits due the representatives of its deceased members; that a deceased member of the society should have died, and that his representative was entitled to a benefit arising from his death, and that an assessment upon all of the surviving members was actually made by the board of directors, or an executive committee appointed by them, for the purpose of paying said assessments, are conditions precedent to the right of appellant to demand payment of an assessment from any of its members. And they are not bound to pay any assessment until these things occur. Nor do they forfeit their membership by reason of their failure to pay such assessments, unless these things have occurred. And when the society relies upon the failure of any of its members to pay his assessment as a forfeiture of his membership and benefits under its charter, it must show affirmatively that the assessment was made in the manner indicated, otherwise the member cannot be said to be in default.''

This case was cited in the annotated note to the case of *Bankers' etc., Assn.* v. *Stapp,* 19 Am. St. Rep. 784, in which the annotator says: ''In all cases the burden of proof is on the association to establish a forfeiture by evidence that an assessment was made in the mode pointed out by the charter, otherwise the member is not in default.''

In 19 R. C. L., p. 1261, at § 65 of the chapter on Mutual Benefit Societies, it is said: ''Where an assessment is not legally levied in the mode prescribed by the constitution and by-laws of the particular association, no liability arises on the part of a member to pay such assessment, and his failure to do so does not impair his right to the privileges and benefits extended by the association. In making an assessment, an association

acts in a ministerial and not a judicial capacity, and there is, accordingly, no presumption in favor of the regularity or legality of its assessments, and, where it seeks to avoid liability upon a benefit certificate by reason of the nonpayment of an assessment, the burden of proving that such assessment was duly made in the manner prescribed by the rules and regulations of the order rests upon the association.''

See also *Hogan* v. *Pacific Endowment League*, 99 Cal. 248; *Tobin* v. *Western Mutual Aid Society*, 72 Iowa 261; *Underwood* v. *Iowa Legion of Honor*, 66 Iowa 134, 23 N. W. 300; *Baker* v. *Citizens' Mut. Fire Ins. Co.*, 51 Mich. 243, 16 N. W. 391; *Bates* v. *Detroit Mut. Ben. Assn.*, 51 Mich. 587, 17 N. W. 67. See also the following textbooks on insurance: Niblack, Accident Insurance and Benefit Societies (Mutual Benefit Insurance) 2d ed., §§ 250, 252; Joyce on The Law of Insurance, 2d ed., vol. 3, §§ 1253, 1291, 1292; Bacon on Life & Accident Insurance, 4th ed., vol. 2, § 484.

We conclude therefore that, as the testimony fails to show any action by the board in levying the alleged delinquent assessment, the verdict was properly directed for the plaintiff, and the judgment of the court below is affirmed.