MUTUAL AID UNION v. LOVITT.

Opinion delivered March 8, 1926.

1. INSURANCE—BENEFIT SOCIETY—BY-LAWS AS PART OF CONTRACT.—Where a benefit certificate of a mutual benefit society made the application a part of the contract, and the application stated that the applicant accepted the by-laws and regulations of the society, the by-laws became a part of the contract.

2. INSURANCE—BENEFIT CERTIFICATE—FORFEITURE.—In an action on a benefit certificate, where the defense was that the certificate had lapsed by reason of nonpayment of a certain assessment, it was error to exclude proof that the particular assessment had been regularly called by authority of the board of directors of the benefit society.

Appeal from Crawford Circuit Court; *James Cochran*, Judge; reversed.

*J. V. Walker* and *Duty & Duty*, for appellant.

*D. H. Howell*, for appellee.

WOOD, J. This action was instituted by J. W. Lovitt, the beneficiary in a policy of life insurance issued by the Mutual Aid Union to Mary O. Lovitt, dated the first of October, 1915. Lovitt alleged that Mary O. Lovitt, the assured, died on the sixth of May, 1924, and that the Mutual Aid Union was due him the sum of $1,000 on the policy. In its answer, the defendant set up that the policy had lapsed because of the nonpayment of assess-

ments on the policy in January, 1924. The cause was by consent tried by the court sitting as a jury.

The plaintiff testified, and identified the policy or certificate of insurance, and stated that he was the beneficiary therein. The death of his wife as alleged was admitted by the defendant. Witness stated that he paid all of the assessments of which he received notice. He notified the company of the death of his wife, and it failed to pay. The witness was asked if he paid the January assessment for 1924, and answered that he sent a check in December, and the check was turned down. Witness got notice that the check was turned down, and then he sent a money order to cover this check and pay his last assessment. Witness sent the money order about the tenth of January. After he sent the money order in, he never got any further notice. Witness wrote the company a letter stating that he sent the money order to pay the turned-down check and the last assessment. Witness identified the letter.

After witness wrote the letter and returned to them the $3.53 refund check, he did not send the company any more money; never received any more notices. Witness did not know whether there was a double assessment in December. He only knew as he got notices from the company. The double assessment in the certificate and the other certificates witness was paying on amounted to $7.06. That amount was for a double assessment. His single assessment amounted to $3.53. The amount of $7.06 constituted the payment of the three certificates on which witness was paying. When witness sent the money order back, about the tenth of January, he included enough to take up the check of $7.06 and the last assessment of $3.53, making the total amount of the money order $10.59. Witness never sent the company any more money after sending the money order for $10.59, except he returned just what they had returned to witness. Witness never got any further notice. Witness stated that the Mutual Aid sent him a refund check of $3.53, but did

not remember that the company wrote him a letter, inclosing a little printed card, telling him that they could not accept the amount sent in as a deposit account, but witness did write the letter introduced in evidence.

J. W. Walker testified that he was the president of the Mutual Aid Union. He identified the application of Mary O. Lovitt and the certificate of insurance. A double assessment was issued on the certificate in controversy on November 12, 1923, amounting to $2.16. Lovitt was paying also on two other certificates. The total assessment against the three certificates in November, 1923, amounted to $7.06. The company received a check December 12, 1923, from Lovitt on the Farmers' & Merchants' Bank of Mulberry, Arkansas, for $7.06, covering the three assessments on which he was paying, for November, 1923. The check was returned to the company unpaid. The company, on December 31, 1923, wrote to Lovitt a letter in which it notified him that the $7.06 had been returned unpaid, and requested him to remit at once in order that the certificates might not lapse, and inclosed a self-addressed envelope for Lovitt to use in making his remittance.

The witness explained that the company was a mutual insurance company, doing business on the assessment plan.

In December, 1923, another assessment was called on the certificates on which Lovitt was paying, including the certificate in controversy. On January 12, 1924, another assessment was called against the certificate in controversy, and notice of the January assessment was mailed to Lovitt, he being the person designated in the application to receive such notice, showing the amounts due on the certificates on which he was paying. On January 15 the company received a money order from Lovitt in the sum of $10.59; this order was cashed by the company, and the sum of $7.06 was applied to the payment of the December and January assessments, the amount due at that time on the certificates on which

Lovitt was paying. The company still held Lovitt's unpaid check for $7.06, sent to pay the November assessments, and it supposed that Lovitt wanted the December and January assessments paid with the $10.59. After paying the December and January assessments out of this money order, there was left a balance of $3.53, which the company returned to Lovitt by refund check, and with this the company sent him a notice advising him that the $7.06 had gone to pay the assessments for December, 1923, and January, 1924.

On January 17, 1924, Lovitt wrote the company, returning to it the refund check for $3.53, and stating that it was to take care of the last assessment; also stating that the $7.06, the balance of the money order, was to pay the check that had been returned for the double assessment. In this letter, he requested the company to notify him by return mail whether the matter had been "straightened up," as he wanted to keep paid on the three certificates, including the one in controversy. Upon receipt of this letter, the company canceled the January payment on the certificate in controversy, and applied it to the payment of the November assessment, as requested by Lovitt in his letter, and the December assessment, which absorbed the entire amount of the money order, leaving the January assessment unpaid, on which they had previously mailed notice to Lovitt, which notice he returned to the company in his letter of January 17, 1924. After completing this transaction, the company again sent Lovitt a notice of the January assessment, and wrote him a letter on January 25, inclosing the notice cards. The letter was addressed to him at Mulberry, Arkansas, and advised him of what the company had done in compliance with his last letter, and stated that it had canceled the payment of the January assessment, taking up the turned-down check given for the payment of the November and December assessments, and stating that it was inclosing notice of the January assessment then due, so that he might make payment to cover.

The by-laws of the company were introduced. They provide, among other things, that the levying of an assessment consists of the mailing of a notice to the individual members of the Union, or the person designated by such member to receive the notice, on the authority of the board of directors, giving the date of the assessment and the amount due from the member, and the burden is placed upon the member to show that the notice was not mailed as designated. The levying and mailing of the assessment to the last known address of the members, or the person designated to receive the notice, shall constitute a legal and valid notice of the assessment, although such notice may not in fact be received by the member or person designated to receive the notice; and the failure to receive the notice in fact shall not prevent the certificate from lapsing if the assessment is not paid within the time provided by the by-laws. All members are subject to each and every assessment made against them on their membership certificates. Prompt and due payment of the assesments must be made within thirty days from the date of the assessment, or the membership certificates lapse and become void. Another provision is that when notice of assessment has been made, as provided under the by-laws, to the person designated at his or her last known address, the Union shall not be responsible for default or miscarriage of the postal department in delivering the notice, or for the non-receipt of same by the member, and such fact shall not prevent the certificate from lapsing if the assessment is not paid, as in the by-laws specified. There is a provision for reinstatement of the member whose certificate has lapsed within twelve months thereafter, by paying an amount equal to all of the assessments. There is a provision in the application making the same a part of the contract for membership and insurance in the company. Resolutions were offered by the board of directors showing that the assessments were authorized of the members by the board for the months of Novem-

ber and December, 1923, and for the month of January, 1924. Upon substantially the above facts, the court found in favor of the plaintiff, and rendered a judgment in his favor in the sum of $1,000, from which judgment is this appeal.

1. The testimony of Walker by agreement was in the form of depositions. We have set forth the substance of his entire testimony as if no objections had been made to it in the trial court, because we find that such objections as were made were not well taken, and the court erred in sustaining the objections made by plaintiff to certain portions of his testimony. For instance, interrogatory No. 16, "whether or not another assessment against the certificate in controversy was called in December, 1923, and the amount thereof." The court refused to allow the answer to this question to be read, in which he explains, as set forth in his testimony above, that another assessment was called by the board of directors on December 12, 1923, and he explains in detail the assessments which Lovitt was paying on the different certificates, including the certificates in controversy, and stated that on January 12, 1924, another assessment was called against the certificate in controversy, and he tells how the assessments against the other certificates, except the one in controversy, were paid, and shows how the money sent was appropriated. He states that the money sent appellant was appropriated according to the directions of the appellee, who was making the payments, and, after making such appropriations, the assessment for January, 1924, was left unpaid. This testimony was all relevant to the issue, and the court erred in excluding the answer to interrogatory No. 16.

The trial court also excluded the answer to interrogatory No. 20, in which Walker was asked whether or not an assessment had been called by the board of directors in January, 1924, and to which interrogatory he answered in the affirmative, and stated also that the board of directors called an assessment for November

and December, 1923. The court likewise erred in excluding the answer to this interrogatory, because this testimony was relevant to the issue as to whether or not the appellees had placed in the hands of the appellant the assessments that were due on the certificates in controversy, including the January assessment, which appellant claims was not paid, and the nonpayment of same caused the policy to lapse.

The certificate expressly makes the application a part of the contract of insurance, and the application itself states that it is a part of the contract, and that the applicant accepts the by-laws and regulations of appellant. Thus, the by-laws of the association became a part of the contract of insurance. *Baker* v. *Mosaic Templars of America,* 135 Ark. 65; *Sovereign Camp W. O. W.* v. *Newsom,* 142 Ark. 132. See also *United Assurance Association* v. *Frederick,* 130 Ark. 12.

Section 4 of the by-laws of the association provides, in substance, that the revenue of the association shall be derived from assessments of its members. After providing how the amount of the assessment should be ascertained, it provides that the levying of an assessment shall consist of the mailing of a notice to the individual members on the authority of the board of directors, which notice shall include the date of the assessment and the amount due from the member. Then follows the provision that when the assessment has been levied it shall be accepted as *prima facie* evidence of the mailing of the notices, etc. Now, there is no provision in the by-laws prohibiting the president of the appellant from testifying that the assessments were called by the authority of the board of directors or making the record itself the only evidence, or the best evidence, of the fact that the assessments were called by the authority of the board of directors. In the absence of such provision in the by-laws, the fact that the directors authorized the call of the assessment may be proved by the president or the secretary of its board of directors, and certainly by

copies of the resolutions of the board of directors calling the assessments.

The court erred in not taking into consideration the answer of Walker to interrogatory No. 20, in which he testified that there was an assessment by the board of directors for January, 1924, and also November and December, 1923, and presented copies of the resolutions of the board calling such assessments. These resolutions show that the board of directors ordered the assessment, and that the secretary was directed to mail a notice to each member of the particular circles of appellant in which the assessments were levied, showing the date and the amount thereof. The testimony of Walker in connection with the resolutions was sufficient to show that the assessments for the months of November and December and January were called in accordance with the by-laws of the appellant, and in conformity with the law applicable to such cases announced in *Mutual Aid Union v. Perdue,* 162 Ark. 551. In that case we said "that the levying of assessments was not a mere clerical duty which the secretary might perform, but that the authority and duty to levy assessments devolved upon the board of directors, and that a valid assessment could only be levied by the board." In the case at bar the assessments were levied by the board, and the amounts called and the times when they were to be paid were fixed, definite and certain, as shown by the testimony of Walker.

2. Since the testimony of Walker was relevant, and shows that the assessments were duly called, the only remaining question is whether or not the January assessment was paid. This is purely a question of fact, and the undisputed testimony set out above shows that the January assessment was not paid. The correspondence in the record between the appellant and the appellee in regard to the payment of the assessments for November, December and January, proves conclusively that the January assessment was not paid. The appellee's letter of January 17 directed the appellant specifically how the

money he had sent was to be appropriated. In this letter he requested the appellant to let him know by return mail if they had "straightened up" the matter, and expressing a desire to keep the assessments paid on the three certificates, including the one in controversy. The appellant in answer to that letter on January 25, told appellant that they had made the appropriations of the amount of money in its hands in compliance with his request, and that it left the January assessment unpaid, and requested appellee to remit that assessment. And, on February 1, 1924, the appellee was notified that the assessment on the certificate in controversy had not been paid, and, unless paid by February 12, the certificate would lapse. The appellee admitted that he received a letter after the 17th of January, 1924, but denied that he received a letter of appellant of January 25. He stated that the company wrote him that the policy was in good condition. On cross-examination, he stated that he sent them the $10.59 in January, which paid all assessments due at that time, but he did not remember whether it included the January assessment. While he testified that he did not receive any notice after he sent appellant the money on the 10th of January, 1924, he does not deny that he received the letter of appellant to him on February 1, 1924, stating that it had notified him twenty days before the January assessment—that the January assessment was due, and that they had heard nothing from him.

The testimony adduced by appellant shows that the January assessment has not been paid, and there is no testimony of appellee to the contrary.

Therefore we are convinced that there is no testimony to support the finding of the trial court that the January assessment was paid. Under the by-laws, unless the assessments were paid within thirty days, the certificate lapsed and was void. The judgment is reversed, and, inasmuch as the testimony has been fully developed, the cause is dismissed.

Wood, J., (on rehearing). Our attention is called to the fact that the motion for new trial does not assign as error the ruling of the trial court in excluding the answer to interrogatory No. 20 in Walker's deposition. We therefore cannot consider the ruling of the court in excluding the answer to interrogatory No. 20. But we cannot agree with learned counsel in their contention that the answer to interrogatory No. 16 does not show that the January assessment was called by the authority of the board of directors. The answer to interrogatory No. 16 must be considered as a whole. True, by question No. 16 the witness was asked only whether or not another assessment was called against the certificate in December, 1923. But the witness, in answer to the question, not only answered as to the assessment for December, 1923, but also as to the assessment for January, 1924. Although the answer covered more ground than the interrogatory, nevertheless the answer was relevant to the issue, and was admissible. After stating that assessments were called by the board of directors for December, 1923, and the amounts thereof, the witness continues: "On January 12, 1924, another assessment was called against certificate 279 in circle 45, which is the certificate involved in this suit." It occurs to us that the information sought by the interrogatory was whether or not the assessment was legally called. That is the necessary implication. That was the information desired, and when the witness stated that the December assessments were called by the board of directors, and followed this immediately by the statement that on January 12 another assessment was called, he necessarily meant that the January assessment was likewise called by the board. An assessment could not have been legally called in any other way. When the answer is taken as a whole, it would be "sticking in the bark" to hold that the witness did not say that the January assessment was called by the board of directors.

The motion for rehearing is therefore overruled.