· MUTUAL AID UNION *v.* HOLLANDSWORTH.

Opinion delivered October 11, 1926.

1. INSURANCE—RELEASE—BURDEN OF PROOF.—In an action on a benefit certificate of insurance, where plaintiff had executed a release in settlement for the death claim, the burden was on her to show that such release was invalid.

2. INSURANCE—CONCLUSIVENESS OF SETTLEMENT.—Where defendant insurance company's adjuster had represented that the company was not liable on its benefit certificate and offered a small settlement, which plaintiff did not accept until she had made a full independent investigation, the settlement was binding, even though plaintiff thereby surrendered rights which the law would have sustained.

3. INSURANCE—LIABILITY OF ASSESSMENT COMPANY.—A· fraternal benefit society is not estopped to deny liability on a certificate because the deceased's death claim was included in a list for which assessments were levied, where there was no showing that the company made any false entry on its books as to the amount paid to the claimant in settlement, and under its system of operation there was no way to provide funds to pay her claim except by assessments on surviving members.

Appeal from Sharp Circuit Court, Southern District; *John C. Ashley,* Judge; reversed.

*J. V. Walker* and *Duty & Duty,* for appellant.

*S. M. Bone,* for appellee.

SMITH, J. This is an action instituted by appellee on a benefit certificate of insurance in the sum of $1,000 to recover an unpaid balance alleged to be due, there having already been paid a part of the sum named in the certificate. Appellant, a fraternal mutual insurance company, hereinafter referred to as the company, defended on the ground that there was no liability at all, on

account of the fact that the certificate had lapsed for the nonpayment of dues, and also on the ground that there had been a settlement of the disputed claim and that appellee had executed a release in consideration of the sum agreed upon, and which had been paid her.

To this answer appellee filed a reply in which she denied that the certificate had lapsed, for the reason that the assessment which the insured had failed to pay had not been levied by any officer of the company authorized so to do, and she alleged that the alleged release was obtained through the fraud of an agent of the company by reason of certain false statements made to her.

The method of operation of the company is fully set out in the opinion in the case of *Mutual Aid Union* v. *Perdue,* 162 Ark. 551, 258 S. W. 375, which was a suit against the appellant company, and need not be repeated here. One of the by-laws of the company provided that, if an assessment was not paid within the time limited for that purpose, the benefit certificates should become void, but there was a provision in the by-laws by which the insurance might be reinstated provided, at the time of reinstatement, a certificate was furnished showing that the insured was then in good health.

The certificate here sued on was made an exhibit to the complaint, and was dated February 1, 1912, and the insured died on the 15th day of April, 1924. Between those dates the certificate of the insured had lapsed more than once, but had been reinstated upon a certificate being furnished, as required by the by-laws of the company, to the effect that the insured was in good health at the time of his reinstatement. When the insured died, proof of his death was furnished, and it appeared from this proof that the insured had been in bad health for several years —was, in fact, suffering from tuberculosis and other ailments and was so afflicted at the time of the last reinstatement, that date being June 27, 1923.

With this information before it, the company took the position that there was no liability under the cer-

tificate, and its adjuster so advised appellee, but, after some negotiation with appellee, the adjuster agreed to pay her the sum of $253 in full settlement of all claims or demands based on the benefit certificate. This sum was arrived at by adding all the assessments paid by the insured, and calculating interest thereon to the time of his death, and adding $60 to cover funeral expenses, and, upon delivery of the check to appellee, she executed a receipt or acquittance in proper form of all claims under the certificate.

The only false representation claimed to have been made to appellee by the adjuster to secure the settlement evidenced by the receipt was the statement that the company was not liable because the reinstatement had been induced by a false statement of the insured concerning the condition of his health. It was not contended that the appellee lacked mental capacity to understand the effect of the receipt, nor was there any claim of duress, nor was it contended that she was deceived as to the character of the instrument she signed or the effect of its execution. The contention is merely that the adjuster falsely advised her that the certificate had lapsed and that nothing could be recovered by a suit on it, whereas the certificate had not lapsed, for the reason that no valid assessment had been levied which the insured had failed to pay.

The contention that there had been no omission to pay a valid assessment is based upon the failure of the company to offer proof that the alleged delinquent assessment had been properly levied by the directors of the company, which we held, in the case of *Mutual Aid Union* v. *Perdue, supra,* the company must show to sustain the defense there made that the certificate had lapsed because of the omission to pay a delinquent assessment.

No testimony was offered at the trial from which this appeal comes concerning the manner in which the assessment in question was levied, but there was offered in evidence the application of the insured for reinstate-

ment, which recited that his certificate had become delinquent for nonpayment of an assessment, and the application also contained the following statement: "And for the purpose of again placing same in good standing, I hereby certify that I am in good health, and authorize you to attach this certificate to my application for membership, and agree that it shall become a part thereof. I am in good health, as I have been for past few years." The undisputed evidence, including that of appellee herself, is to the effect that, on the date when this statement was made, it was not true, as the insured was then in bad health.

Appellee admitted that, after receiving the check, she did not cash it for four or five weeks, and that her reason for not doing so, as stated by herself, was that "I did not know whether that was all I would get or not, and I did not know whether to cash it or not, and I just held it." Appellee also admitted that, during the time she held the check, she consulted with her neighbors as to what she should do, and finally advised with an attorney as to what action she should take, after which she cashed the check. She did not advise with the attorney until after she had executed the receipt and had received the check, but she admitted that the check was not cashed until after she had consulted with the attorney.

The validity of the provision of the by-laws of the company whereby a certificate forfeits for failure to pay assessments is not questioned; the contention is that the company did not prove that any valid assessment had been levied, and that it was therefore in no position to assert that the certificate had forfeited, although it was shown that assessments had not been paid, and that it was a fraud for the adjuster to represent to appellee that the certificate had forfeited.

The case was submitted to a jury under instructions to which numerous exceptions were saved, and there was a verdict and judgment for appellee, from which is this appeal. We do not discuss these instructions, for the

reason that no right to recover was shown by appellee, when the testimony is viewed in the light most favorable to her.

The doctrine of the case of *Security Life Ins. Co.* v. *Leeper, ante* p. 77, and that of *Mutual Aid Union* v. *Whedbee,* 168 Ark. 1017, 272 S. W. 255, are both applicable here, and the doctrine of either case would prevent a recovery.

It will be remembered that appellee had executed a receipt and full acquittance of all demands under the certificate sued on, and the burden was therefore on her to show that this receipt was void. Until this fact was shown, she had no right to sue. She undertook to discharge this burden by alleging that the company had not shown that any valid assessments had been levied. The only proof offered on this allegation was the statement contained in the insured's application for reinstatement, which recited that the policy had lapsed. Appellee failed therefore to show that the execution of the receipt had been procured by **fraud.**

In the Perdue case *supra,* the insurer set up the affirmative defense that the policy had lapsed, and the burden was therefore on it to show that fact. There was no question of settlement in that case. Here the first question which arises is whether the execution of the receipt was obtained by fraud, and that fact was not shown. The statement of the adjuster made to appellee may have been true. The policy may have lapsed. The only testimony offered on the question is to the effect that the policy had lapsed. There was a failure therefore to show that the receipt was void.

The case of *Mutual Aid Union* v. *Whedbee, supra,* is applicable here, for the reason that it does not appear that appellee relied upon the representations of the adjuster, certainly not in cashing the check. According to her own testimony, she was not satisfied that she could recover only the amount of the check. She took four or five weeks to consider the question, during which time she consulted her neighbors, and finally her attorney.

after which she took the affirmative step of cashing the check. In the Whedbee case, *supra,* the syllabus reads as follows: "Where defendant company's adjuster had represented that the company was not liable on a benefit certificate, and offered a small settlement, but plaintiff did not accept it until he had made a full independent investigation, the settlement was binding, though plaintiff thereby surrendered rights which the law would have sustained."

It is true this court held, in the case of *Industrial Mutual Indemnity Co.* v. *Thompson,* 83 Ark. 575, 104 S. W. 200, that, where a release of the insurer's liability on a policy was obtained by fraud, the beneficiary was not required, as a prerequisite to the maintenance of his suit, to tender the consideration paid for such release, but the amount so paid could be deducted at the trial from the amount to which the beneficiary was entitled. But the insured in that case had done no affirmative act after the discovery of the fraud. Here appellee, after making the settlement, took counsel as to whether she should cash the check, and, after an independent investigation, she ratified the settlement by cashing it.

It is finally insisted that the company is estopped from denying liability for the reason that the death claim of appellee's husband was included in a list of claims for which assessments were levied to raise money from the holders of benefit certificates. There is no showing or contention that the company made any false entry on its books as to the amount paid appellee. The company did pay appellee a substantial amount, and, under its system of operation, there was no way to provide funds to pay this and other claims except by assessments on surviving members.

Appellee has shown no reason which would warrant a court or jury in setting aside and annulling her voluntary settlement, and the judgment of the court below must therefore be reversed, and, as the case appears to have been fully developed, it will be dismissed, and it is so ordered.